RECORD NO.  14-1320

IN THE
# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

―――――――――――――

## SLOAN PLEASANTS

*Plaintiff-Appellant,*

**v.**

## TOWN OF LOUISA AND ROBERT RIGSBY

*Defendants-Appellees.*

―――――――――――――

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA,
AT CHARLOTTESVILLE**

―――――――――――――

**BRIEF OF PLAINTIFF-APPELLANT**

―――――――――――

| | |
|---|---|
| **Jeffrey E. Fogel** | **Steven D. Rosenfield** |
| **Attorney at Law** | **Attorney at Law** |
| **913 E. Jefferson Street** | **913 E. Jefferson Street** |
| **Charlottesville, VA 22902** | **Charlottesville, VA 22902** |
| **434-984-0300** | **(434) 984-0300** |
| | |
| **Counsel for Appellant** | **Counsel for Appellant** |

# TABLE OF CONTENTS

<u>Page</u>

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues Presented for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument

     I.    Standard of Review.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     II.   The District Court Erred in Granting Summary Judgment to
           Defendant on His Claim of Qualified Immunity. . . . . . . . . . . . . . . 7

          A.  Defendant Violated Ms. Pleasants's Clearly Established
               Right Not to Be Arrested Without Probable Cause. . . . . . . . . . . 7

          B.  The District Court Erred by Resolving Factual Conflicts
               and Failed to Accord the Plaintiff, as the Non-Movant,
               All Favorable Inferences From the Evidence.. . . . . . . . . . . . . 12

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Request for oral argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                 <u>Page</u>

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . 7, 13

*Carpenter v. Commonwealth*,  44 S.E.2d 419 (Va. 1947). . . . . . . . . . . . . . . . . . 10

*Gnadt v. Commonwealth*, 497 S.E.2d 887 (Va. Ct.App. 1998). . . . . . . . . . . . . . 10

*Harbough v. Commonwealth*, 167 S.E.2d 329 (Va. 1969). . . . . . . . . . . . . . . . . . 10

*In the Interest of J.P.*, 692 N.E.2d 338 (Ill. App. Ct. 1998). . . . . . . . . . . . . . . . 10

*Kama v. State of Florida*, 507 So.2d 154 (Fla. Dit. Ct. App. 1987). . . . . . . . . . . 10

*Lovan v. Dept. of Children and Families*, 860 A.2d 1283
(Conn. App. Ct. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Matter of Anthony C.*, 607 N.Y.S.2d 324 (NY App. Div. 1994). . . . . . . . . . . . . 10

*Michigan v. DeFillippo* 443 U.S. 31 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pleasants v. Town of Louisa*, 524 Fed.Appx. 891 (2013). . . . . . . . . . . . . . . . 8, 9, 11

*Pleasants v. Town of Louisa*, 847 F.Supp. 864  (W.D.Va. 2012). . . . . . . . . . . . . 12

*Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408 (4th Cir. 2004). . . . 7

*State of Washington v. Singleton*, 705 P.2d 825 (Wash. Ct. App. 1985). . . . . . . . 11

*State v. Thorpe*, 429 A.2d 785 (R.I. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Thomas v. Nugent*, ___ S.Ct. ___, 2014 WL 235065 (2014). . . . . . . . . . . . . . . . 13

*Tolan v. Cotton*, 134 S.Ct. 1861 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 22

## Rules

Rule 56(a), Fed. R. Civ. P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## Statutes

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Virginia Code § 19.2-81.3(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## Other Authorities

1 W.Blackstone, *Commentaries on the Laws of England*, 440
(Oxford Reprint,1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over the federal constitutional claims below pursuant to 28 U.S.C. §§1331 and 1343. This Court has jurisdiction over this appeal, pursuant to 28 U.S.C. §1291, from the final judgment below, which was entered March 18, 2014 and disposed of all claims in the case. The notice of appeal in this case was timely filed on April 8, 2014. (J.A. 59).

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Did the district court err in granting qualified immunity to Defendant Rigsby for arresting Ms. Pleasants without probable cause and in the face of clearly established law?

2.    Did the district court err by relying on facts not of record, resolving disputed facts and drawing inferences in favor of the party moving for summary judgment?

# STATEMENT OF THE CASE

On April 26, 2011, Plaintiff Sloan Pleasants filed suit against the Town of Louisa and Police Officer Robert Rigsby alleging that the latter had violated Plaintiff's Fourth Amendment rights when he entered her house without a warrant and thereafter arrested her without probable cause. (J.A. 8 et seq.). Thereafter, the

defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (J.A. 3).  After permitting limited discovery on the issue regarding Defendant's entry into Ms. Pleasants' home, the district court granted summary judgment to defendants on qualified immunity grounds on that claim and granted defendants' motion to dismiss the false arrest claim. (J.A. 4).  A timely appeal was taken and, on May 7, 2013, this Court held that Defendant Rigsby was entitled to qualified immunity on the unlawful entry claim, but that the Plaintiff's complaint stated a plausible claim for false arrest. *Pleasants v. Town of Louisa*, 524 Fed.Appx. 891 (4th Cir. 2013).  The case was remanded to the district court for consideration of the false arrest claim and discovery on that claim ensued. Cross motions for summary judgment were filed (J.A. 5-6) and, on March 18, 2014, the district court entered an order denying summary judgment to Plaintiff and granting summary judgment to Defendant Rigsby on the grounds of qualified immunity. (J.A. 168).  A timely appeal was filed by the Plaintiff on April 8, 2014 (J.A. 169).

2

## STATEMENT OF FACTS

In late 2009, Plaintiff Sloan Pleasants was the custodial parent of K.P., then eleven years old. (J.A. 61, 65).  Her ex-husband, Richard Kevin Pleasants, from whom she had been divorced seven years earlier, had visitation every other weekend but was now seeking to change custody. (J.A. 65).

On Sunday, November 1, 2009, after a weekend visitation and a conversation with his daughter, Mr. Pleasants contacted Ms. Pleasants and told her that he was coming to get K.P.  (J.A. 48).   Mr. Pleasants contacted law enforcement and requested a witness to go with him to his ex-wife's house. (J.A. 146A).  He told Defendant Rigsby, who responded, that his daughter told him on the phone, upset, crying, bawling and hysterical, that her mother was throwing her out of the house and that he was going to pick her up as K.P. was going to live with him. (J.A. 85,146).  He also told Officer Rigsby that his ex-wife "drinks." (J.A. 109).  Mr. Pleasants explained that he wanted an escort because, due to his size and apparent strength, he had been accused in the past of intimidating people and he wanted a witness to protect him against such a possible accusation. (J.A. 143-144).

When Mr. Pleasants arrived at the house, Ms. Pleasants, after a brief conservation, told him to leave and shut the door. (J.A. 46).  Shortly thereafter, K.P. opened the door and Rigsby heard her tell Ms. Pleasants that she wanted to go

with her father. (J.A. 86).  Both mother and daughter were crying and K.P. thereafter left with her father, after embracing her mother. (J.A. 47, 87).

On Sunday, December 13, 2009, Mr. Pleasants, after a weekend visitation, returned K.P. to her mother. (J.A. 137).  In the car on the way home, when her mother did not immediately agree to allow her to spend a non-visitation week with her father, K.P. told her "you don't tell me what to do. My dad says I can come live with him." (J.A. 69-71).  K.P. then threw a temper tantrum, kicking, swinging, hollering and crying. (J.A. 38).[1]  Ms. Pleasants attempted to tap her daughter on the leg, in order to calm her down, but instead hit her on the arm that K.P. had raised. (J.A. 71-72). No further conversation ensued in the car. (J.A. 72).

After arriving home, K.P. called and spoke to her father, very upset and crying, telling him that she and her mother had gotten into an argument and asking that he come and get her. (J.A. 138).  After that phone call, Mr. Pleasants and Sloan Pleasants had a phone conversation in which he asked to speak again with K.P. (J.A. 59).  Ms. Pleasants refused because he had just dropped K.P. off and because every other weekend when he had visitation "this was an ongoing thing." (J.A. 73).

As it was late Sunday night before school, Ms. Pleasants told her daughter to go upstairs and take a shower. (J.A. 74).  K.P. went upstairs but instead of taking a

---

[1]At the time, it was raining, snowing and foggy. (J.A. 61).

shower, sat in the hallway again telling her mother that she did not have to listen to her. (J.A. 74-75). Ms. Pleasants then tried to pick her daughter up by her arms from the floor to take a shower, but was unable to do so because her daughter, at 150 pounds, was heavier than she. (J.A. 75-76). Ms. Pleasants just let her sit there. (J.A. 75).

Meanwhile, Mr. Pleasants contacted Louisa law enforcement for a "welfare check" on his daughter. (J.A. 139). Defendant Robert Rigsby, then a police officer, again accompanied him to Ms. Pleasants' home. (J.A. 92). Ms. Pleasants, responding to her ex-husband at the door, told him "You can't keep doing this every weekend." (J.A. 96). She pointed to K.P., who was standing right there, and told him, "She's here and she's fine." (J.A. 54). As she went to close the door, Officer Rigsby stepped in front and entered the home, where he began questioning K.P. (J.A. 57).

In response to his questioning, K.P. told Defendant Rigsby that her mom and she got in a fight. (J.A. 78). Ms. Pleasants said to explain what you mean and K.P. said my mom and I got into an argument. (J.A. 78). At that point, Defendant Rigsby told Ms. Pleasants to be quiet and she complied. (J.A. 78).[2] On further questioning, K.P. told Rigsby "[s]he had been slapped on her arm because her

---

[2]At some point, Ms. Pleasants briefly demonstrated to Rigsby exactly how she had touched her daughter. (J.A. 152).

mother had tried to slap her on the leg but [K.P.] had put her hand down there and gotten slapped on her arm." (J.A. 18).  There was then a discussion between Rigsby and K.P. about precisely how her mother had slapped her, with Rigsby using motions to show a fist, a back hand slap and an open hand. (J.A. 79).  K.P. demonstrated by showing the motion of an open hand on her arm. (J.A. 79).  On further questioning, K.P. told Rigsby that later, her mother had grabbed her by the wrist to go take a shower. (J.A. 63, 82).  At that point Officer Rigsby advised Ms. Pleasants that she was under arrest. (J.A. 63).  He led her out in handcuffs and took her to the Sheriff's Office where he swore out a complaint and secured a warrant charging her with assaulting a family member (K.P.) in violation of Virginia Code § 18.2-57.2.  (J.A. 38, 40, 142).  Thereafter, the criminal charges against Sloan Pleasants were dismissed on the motion of the Commonwealth Attorney. (J.A. 10, 18).

At no time did Officer Rigsby observe any indicia of physical contact, no less harm or injury to K.P.  (J.A. 104).  In addition, upon later questioning by her father, K.P. said she was not hurt in any way. (J.A. 143).

## SUMMARY OF ARGUMENT

Sloan Pleasants maintains that the physical contact with her daughter on December 13, 2009 was within the bounds of reason and due moderation as is expressly permitted by Virginia law.  Thus, probable cause for her arrest was lacking.  The district court's grant of qualified immunity was improperly based on facts not of record, disputed facts and inferences that favored the moving party.

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews the grant or denial of summary judgment *de novo*. *See e.g. Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004).  A party is only entitled to summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. Pro.  In deciding such a motion, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II.   THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT ON HIS CLAIM OF QUALIFIED IMMUNITY.

## A.    Defendant Violated Ms. Pleasants's Clearly Established Right Not to Be Arrested Without Probable Cause.

In *Pleasants v. Town of Louisa*, 524 Fed.Appx. 891, 898 (2013), this Court held that, based on the allegations of Plaintiff's complaint, "in the absence of more factual context for Pleasants's use of force, probable cause for her arrest was so lacking that Officer Rigsby violated her clearly established right not to be arrested without probable cause." In her complaint, Ms. Pleasants briefly described the information Defendant had when he arrested her; K.P. told Rigsby that her mother had slapped her on the leg where her arm was resting and also that her mother grabbed her by her wrist and told her to take a shower. (J.A. 9). The complaint also alleged that Defendant saw no welts or other indicia of even a mild or minor physical injury. (J.A. 10).

The factual context for Ms. Pleasants's use of force was fully explored on remand in discovery and those facts fully support the determination that probable cause was lacking. In the first instance, K.P. was throwing a temper tantrum in the car as her mother was driving her home in the rain, snow and fog.. Ms. Pleasants reached over to tap her on the leg to calm her down but struck K.P.'s hand which was resting on her leg. Later, once home, K.P. refused to take a shower and was again throwing a temper tantrum and so her mother took her by the arms to lift her up to go to take a shower but her daughter was heavier than she and she could not pull her up. No harm befell K.P. from either of these incidents.

8

What Officer Rigsby knew at the time he arrested Ms. Pleasants was also explored on discovery. This, of course, is critical, since "'probable cause' to justify an arrest means facts and circumstances *within the officer's knowledge* that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979)(emphasis supplied). Defendant Rigsby testified that he was told by K.P. that "[s]he had been slapped on her arm because her mother had tried to slap her on the leg but [K.P.] had put her hand down there and gotten slapped on her arm."(J.A. 105). The record does not reveal any attempt by Officer Rigsby to learn the reason why Ms. Pleasants had used this minimal force.[3] K.P. also told Officer Rigsby that her mother had grabbed her by the wrist to try to pull her up to take a shower,[4] at which point Officer Rigsby arrested Ms. Pleasants.

As this Court noted, the right to be arrested only on probable cause is clearly established. *Pleasants, supra*. 524 Fed.Appx. at 898. In addition, Virginia expressly allows some degree of corporal punishment by a parent. *Id.*

---

[3] Later, after the arrest, K.P. wrote a statement in which she stated that her mother would not let her go to her father's for the following (non-visitation) weekend and that she yelled at her mother at which point her mother slapped her hand. (J.A. 42).

[4] There is a dispute about exactly what K.P. told Rigsby. *See infra*. at 21.

The common law recognized the right and responsibility of parents to discipline their children and to use force for that purpose. 1 W.Blackstone, *Commentaries on the Laws of England*, 440 (Oxford Reprint,1966)(common law rule of England that the parent "may lawfully correct his child, being under age, in a reasonable manner; for this is for the benefit of his education."). The Supreme Court of Virginia has specifically recognized the right of a parent "to punish a child within the bounds of moderation and reason." *Carpenter v. Commonwealth*, 44 S.E.2d 419, 423 (Va. 1947).[56] Every state in the country agrees. *See e.g. Lovan v. Dept. of Children and Families*, 860 A.2d 1283, 1289 (Conn. App. Ct. 2004)(right of parent to use corporal punishment "within the bounds of moderation and reason"); *In the Interest of J.P.*, 692 N.E.2d 338, 345 (Ill. App. Ct. 1998)( "It is clear that a parent has the "right" to corporally discipline his or her child . . . ."); *Matter of Anthony C.*, 607 N.Y.S.2d 324 (NY App. Div. 1994)(parents are entitled to use reasonable corporal punishment to maintain discipline); *Kama v. State of Florida*, 507 So.2d 154, 156 (Fla. Dit. Ct. App. 1987)("well established principle

---

[5]Under Virginia law, no crime is committed when those authorized by law to use force do so within the limits of that authorization. *See e.g. Gnadt v. Commonwealth*, 497 S.E.2d 887, 888 (Va. Ct.App. 1998).

[6]To determine whether punishment is moderate or excessive, consideration must be given to the "age, size and conduct of the child, the nature of the misconduct, and the kind of marks or wounds inflicted on the body of the child. " *Harbough v. Commonwealth*, 167 S.E.2d 329, 332. (Va. 1969).

that a parent . . . does not commit a crime by inflicting corporal punishment on a child subject to his authority, if he remains within the legal limits of the exercise of that authority."); *State of Washington v. Singleton*, 705 P.2d 825, 827 (Wash. Ct. App. 1985)("A parent had a right to use reasonable and timely punishment to discipline a minor child within the bounds of moderation and for the best interest of the child.); *State v. Thorpe*, 429 A.2d 785, 788 (R.I. 1981)(parent may inflict corporal punishment so long as not unreasonable or excessive).

The "details of Pleasants's contact with K.P." (*Pleasants, supra*. 524 Fed. Appx. at 898) fall squarely within the bounds of due moderation as is expressly permitted under Virginia law, the common law and that of every other state. Virtually everyone in our country, not just reasonable police officers, knows that parents may use such moderate force.  Any reasonable person would also recognize that slapping a child on the knee while she is throwing a temper tantrum and grabbing her by the wrist while telling her to take a shower, neither of which caused any marks or other evidence of excessiveness, and which caused no harm to the child, is within the bounds of moderation.  It does not come close to a grey area in which a reasonable question is raised as to whether the force was moderate or

11

excessive.[7]

The factual record in this case is fully consistent with the allegations of the complaint and "probable cause for [Ms. Pleasants's] arrest was so lacking that Officer Rigsby violated her clearly established right not to be arrested without probable cause."

## B. The District Court Erred by Resolving Factual Conflicts and Failed to Accord the Plaintiff, as the Non-Movant, All Favorable Inferences From the Evidence.

The district court declined to determine whether there was probable cause for the arrest, deciding instead that Defendant was entitled to qualified immunity because a reasonable officer could have found probable cause and "thus reasonably believed that the action of arresting Plaintiff was lawful and indeed mandated by Virginia Code § 19.2-81.3(B). (J.A. 166). According to the district court, "the summary judgment record presents a picture of an officer who could reasonably perceive a situation involving a frightened child, a mother preventing that child from speaking to the police, and allegations of violence more serious than the light contact described in the complaint." (J.A. 165). In reaching this conclusion, the

---

[7]As the district court recognized in its initial decision, all of the reported cases in Virginia regarding assault and battery on a child by a parent involved much more serious allegations of force and harm. *Pleasants v. Town of Louisa*, 847 F.Supp. 864, 881 (W.D.Va. 2012).

12

court relied on facts that are not of record, resolved contested facts and improperly drew inferences in favor of the moving party.

The Supreme Court, just last month, twice took the occasion to remind trial courts that "in ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014)(*per curiam*)(citing and quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Thomas v. Nugent*, ___ S.Ct. ___, 2014 WL 235065 (Mem)(summarily vacating and remanding for reconsideration of decision granting qualified immunity in light of *Tolan, supra*.). The Court emphasized "the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides on the clearly-established prong of the [qualified immunity] standard." *Tolan, supra. at* 1866.[8] It is a jury question, even where qualified immunity is claimed, whether an officer drew reasonable inferences from the facts. *Tolan, supra*. at 1867 ("A jury could well have concluded that a reasonable officer would have heard Tolan's words, ['get your fucking hands off my mom'], not as a threat, but as a son's plea not to

---

[8]Moreover, just because courts regularly recite the correct standard for summary judgment motions does not mean that they are properly applying that standard. The Fifth Circuit in *Tolan* had invoked the correct standard, *see Tolan v. Cotton*, 713 F.3d 299, 304 (5th Cir. 2013), but failed to apply it properly.

continue any assault of his mother.")

In support of its conclusion that Defendant is entitled to qualified immunity the district court relied on certain facts.  Initially, the district court referred to the events, six weeks earlier, on November 1, stating that Mr. Pleasants told Defendant Rigsby that, while on a telephone call with Plaintiff, "[he] heard his daughter in the background crying and screaming, and he was concerned about her. And his ex-wife wouldn't let him talk to her." (J.A. 153).  In fact, Mr. Pleasants told Officer Rigsby that he did speak with K.P. who was upset, crying and bawling while speaking with him because she wanted her father to pick her up. (J.A. 85).  The deposition testimony cited by the district court is that of Defendant and refers not to the events of November 1, but rather the events of December 13. (*See* J.A. 92-93).[9]  The district court goes on to state that "[o]n November 1, 2009, Defendant performed a welfare check on K.P." J.A. 163.[10]  In fact, Mr. Pleasants asked for a police escort on November 1, not for a "welfare check" on his daughter, but simply to witness the interaction between himself and his ex-wife because he had previously been accused of intimidating people due to his size and build. (J.A. 143-

---

[9]Even as to the events of December 13, there is a genuine dispute about these facts and the inferences to be drawn. *See infra*. at 17 et seq.

[10]The court later refers to this "fact" several times in its opinion. (J.A. 155, 163, 165).

14

144).[11]

The district court next refers to the assertion by Mr. Pleasants to Defendant that Plaintiff was "throwing K.P. out of the apartment." (J.A. 154). However, what Defendant saw when he went to the house with Mr. Pleasants directly contradicted what he had been told. When Mr. Pleasants went to the door, Ms. Pleasants told him to leave and shut the door. (J.A. 46).[12] What Defendant heard and saw was that Ms. Pleasants was not throwing her daughter out. In fact, she didn't want her to leave at all.[13] It is apparent that it was K.P. who wanted to leave and did leave with her father, after embracing her mother. At the time, K.P. was still crying, distressed and upset. There was no indication that the crying and screaming and bawling that was related to Defendant Rigsby or that he saw had anything to do

_____

[11]According to the district court, Mr. Pleasants asked for a police escort "because Plaintiff had previously accused him of intimidating her." (J.A. 154). Mr. Pleasants never said that Plaintiff had accused him of anything, just that in the past, due to his size, he had been accused of intimidating people. (J.A. 144-145; J.A. 121).

[12]Even here the district court opinion draws an unwarranted inference. The court states that Ms. Pleasants "slammed the door shut" (J.A. 154), when the referenced testimony simply said she shut the door. (J.A. 46). Defendant Rigsby stated that the door was slammed shut (J.A. 86) and, apparently, the district court decided to credit his testimony.

[13]Officer Rigsby acknowledged that he was surprised that, after being told that Ms. Pleasants was throwing K.P. out, in fact she did not want her to leave. (J.A. 127).

15

with the use of any physical force by Ms. Pleasants. Indeed, both daughter and mother were crying. (J.A. 47). It simply had to do with an eleven year old's desire to be with her father at that moment. Nor was there any corroboration of Mr. Pleasants's claim that Ms. Pleasants had a drinking problem, yet the district court referenced that "fact" as well. (J.A. 154). The most reasonable inference to draw from this incident is that this eleven year old wanted to be with her father, notwithstanding the custody order, and that she was upset that she could not and so called her father, upset, crying and bawling and asked him to pick her up. Though Ms. Pleasants was annoyed at the intrusion and told her ex-husband to leave her alone, she did not stop her daughter from leaving with her father. However, the district court drew inferences that favor the Defendant moving party, by claiming that these events supported Defendant Rigsby's belief that Ms. Pleasants had an abusive relationship with her daughter and committed an assault and battery on her six weeks later. While Rigsby may try to make an argument to that effect to the finder of fact, the district court should not have relied on disputed facts and inferences that favor the moving party.

With regard to the events of December 13, the district court identified a number of facts and interferences to support its conclusion that Defendant was entitled to qualified immunity. First, the court points to the information supplied to

16

Defendant by Mr. Pleasants that K.P. was crying and bawling on the phone with him.[14] (J.A. 154).  The most reasonable inference from that and certainly the one favorable to the non-moving party is that once again K.P. wanted to be with her father and, just as in the incident of November 1, she emotionally expressed that by crying and bawling.  Moreover, Mr. Pleasants never told Officer Rigsby that he feared for his daughter's safety or that she had been harmed. (J.A. 147).

Next, the district court pointed to the testimony of Defendant Rigsby that K.P. was "crying, upset, and appeared to be somewhat distressed, shook up, possibly in trauma." (J.A. 163).  This description matches what Mr. Pleasants heard on the telephone, and what Officer Rigsby had seen on November 1, but the district court improperly drew the inference that this reflected some evidence of physical violence, even though the father had no such thought.  In addition, the district court points to the testimony of Defendant Rigsby that K.P. was "bashful and shy toward her mom that she was hesitant to come toward the doorway where her mom was." (J.A. 164).  According to Defendant Rigsby, he had not entered the house and Mr. Pleasants called K.P. to the door to speak with them as Ms. Pleasants was holding

---

[14]The district court notes that there is a dispute over whether Mr. Pleasants spoke with K.P. directly. (J.A. 154).  According to Mr. Pleasants, he told Defendant Rigsby that he spoke directly with his daughter who asked that he come and get her. (J.A. 147).

17

the door. (J.A. 99-100). However, according to Ms. Pleasants, Officer Rigsby entered the premises, K.P. never went to the door, and Rigsby questioned her as she was seated on the stair case. (J.A. 56-57). Moreover, Rigsby acknowledged that it was a guess on his part that K.P. was afraid because of her mother's presence, explaining that in his experience "when children are looking at their parent, they're either looking for their approval or they're looking for the parent to reprimand them later from what they've said." (J.A. 114). He even acknowledged that K.P. could have been looking to her parent to protect her from him (J.A. 114-115), and that she could have run to her father if she was afraid of her mother. (J.A. 115).

There is no question that this eleven year old was upset at her mother for not allowing her to have her way and go with her father. Even if she was "bashful and shy towards her mom," the inference that it was because she had been battered is unwarranted, and the one most favorable to the moving party.

The district court asserted that another fact supporting arguable probable cause was Ms. Pleasants's "multiple efforts to prevent dialogue between [Rigsby] and that child," so that he could "reasonably perceive those actions as the kind of steps an abusive authority figure would take to keep their child from speaking out

18

against them."(J.A. 165).[15]  What the record shows is that Ms. Pleasants was upset

at her ex-husband when he showed up a second time with a police officer and told

him (within the hearing of Officer Rigsby) "[y]ou can't keep doing this every

weekend." (J.A. 96).  Mr. Pleasants asked to see K.P., who was standing right

there, and Ms. Pleasants showed him K.P. as she told him "She's here and she's

fine." (J.A. 54).[16]  As she went to close the door, Officer Rigsby stepped in front of

Mr. Pleasants and entered the home (J.A. 56), where he began questioning K.P.

(J.A. 57).  In response to his questioning, K.P. told Defendant Rigsby that her mom

and she got in a fight. (J.A. 78).  Ms. Pleasants said to explain what you mean and

K.P. said my mom and I got into an argument. (J.A. 78).  At that point, Defendant

Rigsby told Ms. Pleasants to be quiet and she complied. (J.A. 78).[17]  On further

questioning, K.P. told Rigsby"[s]he had been slapped on her arm because

her mother had tried to slap her on the leg but [K.P.] had put her hand down there

and gotten slapped on her arm." (J.A. 18).  There was then a discussion between

---

[15]The district court even states that the record reveals that Plaintiff
attempted to prevent Defendant from speaking to K.P. on the phone (J.A. 165),
though there is no such evidence in the record.

[16]The district court stated that Ms. Pleasants then pointed at Mr. Pleasants
and Defendant and told them to get off her property. (J.A. 155).  However, Officer
Rigsby never heard her say anything of the kind.  (J.A. 96-97).

[17]At some point, Ms. Pleasants briefly demonstrated to Rigsby exactly how
she had touched her daughter. (J.A. 152).

Rigsby and K.P. about precisely how her mother had slapped her, with Rigsby using motions on the wall to show a fist, a back hand slap and an open hand. (J.A. 79). K.P. demonstrated by showing the motion of an open hand on her arm. (J.A. 79). From this set of facts, the lower court drew the unwarranted inference (and certainly the one most favorable to Rigsby) that Ms. Pleasants had engaged in multiple efforts to prevent dialogue between Officer Rigsby and her daughter.

The district court also concluded that a statement by K.P. that "'my mom hit me' is much more serious than the slap on the leg the complaint describes." (J.A. 165). "My mom hit me" can mean many things, but according to Officer Rigsby, K.P. immediately described "that her mother had reached over to hit her and had slapped her or hit her on her hand." (J.A. 100-101, 105). Thereafter, K.P. demonstrated what happened using her open hand on her hand. There is nothing in the record to suggest that K.P. meant anything more than a slap which is exactly what she demonstrated. (J.A. 79). Only by taking the word "hit" out of the sentence in which it was rendered and ignoring the physical description given by K.P. could one claim this as "much more serious than the slap on the leg the complaint describes" or as an act of violence.

The district court relied on disputed testimony to conclude that "being jerked up by the wrist hard enough to be capable of tumbling back down into a chair is

20

similarly very different from simply being grabbed the wrist and being told to shower." (J.A.165).  According to Defendant Rigsby, K.P. told him that "her mom had come over and grabbed her out of a chair and pulled her up by her arms up out of the chair, and told her she was going to take a shower. . . . K.P. fell back into the chair after she had pulled away from her mom." (J.A. 151).  However, Ms. Pleasants testified that K.P. told Rigsby simply that her mom had grabbed her by the wrist to go take a shower. (J.A. 63, 82).  Thus, the district court improperly credited the testimony of Defendant rather than that of Plaintiff.  Moreover, even Rigsby's description of what he was told is not an "allegation of violence" as claimed by the district court since K.P. fell back into the chair because she pulled away from her mom, not because of the violent nature of being pulled up by her arms.  K.P.'s statement does not differ in substance from the allegation in the complaint that she told Officer Rigsby that her mother grabbed her by the wrist and told her to take a shower.  In any event, what Rigsby was told and any inference to be drawn from K.P.'s statement is a matter for a jury.  In this case, the district court usurped the function of the jury by deciding contested facts and drawing inferences that favored the moving party.

The district court goes on to state that K.P. initially stated that she got into a "fight" with her mother and that K.P.'s description of the fight as an "argument"

21

could be perceived as the effort of a "cowed child" to "try to explain away a statement like 'my mom hit me' to appease a nearby guardian of whom she was frightened." (J.A. 165). First, there is no evidence in the record to support the notion that this was a "fight" rather than an argument. Second, the description of what transpired was indeed that of an argument and not a fight. Finally, if there is an inference to be drawn about why K.P. described it as an argument, that is to be determined by a jury, not by the district court drawing the inference most favorable to Defendant Rigsby.

The conclusion of the district court to grant summary judgment to Defendant on the basis of qualified immunity improperly rests on facts not of record, disputed facts and disputed inferences. "By weighing the evidence and reaching factual inferences contrary to [Pleasants'] competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Tolan v. Cotton*, *supra*. 134 S.Ct. at 1868.

## CONCLUSION

For the foregoing reasons, the order granting summary judgment to Defendant on the grounds of qualified immunity should be reversed.

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully requests oral argument.

Respectfully submitted,

SLOAN PLEASANTS
By Counsel

s/Jeffrey E. Fogel
Jeffrey E. Fogel
Attorney at Law
913 E. Jefferson Street
Charlottesville, VA 22902
(434) 984-0300

Steven D. Rosenfield
Attorney at Law
913 E. Jefferson Street
Charlottesville, VA 22902
(434) 984-0300

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitations of F. R. App. P. 32(a)(7)(B) because the brief contains 5,409 words.

2.    This brief complies with the typeface requirements of F. R. App. P. 32(a)(5) and the type style requirements of F. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect 11 in 14 point face and the style is Times New Roman.

s/Jeffrey E. Fogel
Jeffrey E. Fogel

23

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on June 9, 2014 I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send information of such filing to the following:

> M. Scott Fischer
> David P. Corrigan
> Jeremy D. Capps
> Harman, Clayton, Corrigan & Wellman
> P.O. Box 70280
> Richmond, VA 23235

s/Jeffrey E. Fogel
Jeffrey E. Fogel

24